**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| **JAMELL A. MURPHY,** | |
| **Plaintiff,** | |
| **v.** | **Case No. 19-cv-1051-NJR** |
| **WEXFORD HEALTH CARE SOURCES, INC., et al.,** | |
| **Defendants.** | |

## MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

This matter is before the Court on Plaintiff Jamell Murphy's motions for preliminary injunction (Docs. 2 and 27). Murphy seeks surgery to remove a mass on his spleen, as well as physical therapy and further monitoring for a removed mass on his lungs. Defendant Frank Lawrence has filed a response (Doc. 33) in opposition to the motion. Dr. Siddiqui and Wexford Health Source, Inc. ("Wexford") have also filed a response (Doc. 57) to the motion.

### BACKGROUND

On August 20, 2019, Murphy filed a Complaint alleging deliberate indifference in the treatment of two masses: one on his left lung and one on his spleen. Although the mass on his lung was removed in April 2019, Murphy has never received surgery for the mass on his spleen despite numerous requests for its removal (Doc. 7, p. 3). Along with Murphy's Complaint, he also filed a motion for preliminary injunction (Doc. 2). Murphy asks to be sent to a specialist and a surgeon to have his mass removed. On October 15,

2019, Murphy filed an amended motion for preliminary injunction (Doc. 27). Murphy alleges that after filing his Complaint, he received a new CT scan of his spleen, ordered by Dr. Siddiqui, which showed that the mass was still present but had not grown (*Id*. at p. 2). Dr. Siddiqui also informed Murphy that the mass was not cancerous, but Murphy points out that he has never had a biopsy to confirm that diagnosis. He also argues that he needs physical therapy for muscle strength lost during his last surgery, but Dr. Siddiqui has informed Murphy that physical therapy is not necessary (*Id*. at pp. 2-3). In addition to his request for surgery, Murphy's amended motion seeks physical therapy and annual CT scans of his lungs to ensure that no new masses develop (*Id*. at p. 3).

Defendant Frank Lawrence was ordered to respond to Murphy's preliminary injunction motion (Doc. 7, p. 7). On October 29, 2019, Lawrence filed his response (Doc. 33). Lawrence argues that Murphy has not shown a likelihood of success on the merits on his claims against Lawrence because he is not a medical provider, is unable to make referrals to specialists, and is allowed to rely on the decisions of medical professionals, which he did when addressing Murphy's grievances.

Dr. Siddiqui and Wexford have also filed a response and have submitted medical records for the Court's review. According to the medical records and Dr. Siddiqui's affidavit (Docs. 57-1, 57-2, and 57-3), Murphy was seen on numerous occasions because he complained of coughing up blood (Doc. 57-1, 57-2). On November 16, 2010, he received a chest x-ray which showed a growth between his lungs and heart (Doc. 57-2, p. 10). On February 23, 2011, another x-ray showed the same growth, but it had not changed in size, and a six-month follow-up was recommended (*Id*. at p. 11).

On September 9, 2011, a follow-up x-ray showed some growth, and a CT scan was

again recommended (*Id.* at p. 12). On October 5, 2011, Murphy had a CT scan which showed a soft tissue mass and a PET scan was recommended to determine if the mass was cancerous (Docs. 57-3, p. 2; 57-2, p. 9). The subsequent PET scan was negative for cancer (Docs. 57-3, p. 2; 57-2, p. 5). The mass was reviewed by x-ray on January 18, 2012, and July 12, 2012, and no change was noted (Doc. 57-3, p. 2). On December 21, 2018, Murphy received another CT scan of the mass (*Id.* at p. 3; Doc. 57-1, p. 32). This scan also revealed for the first time a splenic nodule which the provider noted could have metastasized from Murphy's original mass (Doc. 57-1, p. 32). Dr. Siddiqui referred Murphy to a surgeon for a biopsy to ensure that the mass was not cancerous.

On April 30, 2019, the mass in Murphy's chest was removed, and tests on the mass came back as non-cancerous (Docs. 57-3, p. 3; 57-1, pp. 40-41). Although Murphy now requests physical therapy, Dr. Siddiqui testified in his affidavit that physical therapy was not needed because Murphy remains an active individual (*Id.* at p. 3).

Dr. Siddiqui also noted that the mass on Murphy's spleen continues to be monitored (Doc. 57-3, p. 3). On October 1, 2019, Murphy had a CT scan of his spleen which showed that the mass remains stable and has not grown (*Id.*). Because its size remains stable, Dr. Siddiqi does not believe it to be cancerous. Further, the CT examiner did not believe the mass to be cancerous due to its stability (Doc. 57-1, p. 45). Dr. Siddiqui continues to monitor the mass for growth.

## PRELIMINARY INJUNCTION STANDARD

A preliminary injunction is an "extraordinary and drastic remedy" for which there must be a "clear showing" that a plaintiff is entitled to relief. *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (quoting 11A Charles Alan Wright, Arthur R Miller, & Mary Kay

Kane, Federal Practice and Procedure § 2948 (5th ed. 1995)). The purpose of such an injunction is "to minimize the hardship to the parties pending the ultimate resolution of the lawsuit." *Faheem-El v. Klincar*, 841 F.2d 712, 717 (7th Cir. 1988). A plaintiff has the burden of demonstrating:

1. a reasonable likelihood of success on the merits;
2. no adequate remedy at law; and
3. irreparable harm absent the injunction.

*Planned Parenthood v. Commissioner of Indiana State Dep't Health*, 699 F.3d 962, 972 (7th Cir. 2012).

As to the first hurdle, the Court must determine whether "plaintiff has any likelihood of success—in other words, a greater than negligible chance of winning." *AM General Corp. v. DaimlerChrysler Corp.*, 311 F.3d 796, 804 (7th Cir. 2002). Once a plaintiff has met his burden, the Court must weigh "the balance of harm to the parties if the injunction is granted or denied and also evaluate the effect of an injunction on the public interest." *Id.*; *Korte v. Sebelius*, 735 F.3d 654, 665 (7th Cir. 2013). "This equitable balancing proceeds on a sliding-scale analysis; the greater the likelihood of success of the merits, the less heavily the balance of harms must tip in the moving party's favor." *Korte*, 735 F.3d at 665. In addition, the Prison Litigation Reform Act provides that a preliminary injunction must be "narrowly drawn, extend no further than necessary to correct the harm . . . ," and "be the least intrusive means necessary to correct that harm." 18 U.S.C. § 3626(a)(2). Finally, pursuant to Federal Rule of Civil Procedure 65(d)(2), a preliminary injunction would bind only the parties, their officers or agents, or persons in active concert with the parties or their agents.

**A. Preliminary Injunction Motions**

The Court finds that Murphy is not entitled to the injunctive relief he seeks because he has not shown a likelihood of success on the merits of his claims of deliberate indifference. The evidence presented at the hearing demonstrates that Dr. Siddiqui is not currently being deliberately indifferent to the masses in Murphy's chest and spleen. Although Murphy's counsel asked for an MRI to ease Murphy's concerns and to make sure everything is on the "up and up" with the mass on his spleen, that is not the standard. The standard is whether the defendants have displayed *deliberate indifference* to Murphy's serious medical needs. *Greeno v. Daley*, 414 F.3d 645, 652–53 (7th Cir. 2005) (*quoting Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (internal quotation marks omitted)). Murphy must show that a prison official had subjective knowledge of—and then disregarded—an excessive risk to his health. *Greeno*, 414 F.3d at 653.

Here, Murphy has not demonstrated that the defendants are currently disregarding his medical conditions. Murphy testified that he had surgery to remove the mass on his lung and was told that it was not cancerous. There is likewise no evidence to suggest that the tumor on his spleen is cancerous. In fact, Murphy testified that Dr. Siddiqui told him that surgery to remove the tumor on his spleen was not necessary and that it would put his body through unneeded stress. Dr. Siddiqui testified that there was no concern that the tumor on his spleen was cancerous but that it was being monitored. In October 2019, Murphy had a CT scan which showed that the tumor had not grown. Dr. Siddiqui testified that the fact that the tumor was stable demonstrated that it was benign and was not causing any harm that would require removal. He testified that he

will continue to monitor the tumor for growth and change in symptoms. Thus, the evidence before the Court indicates that Murphy's mass in his chest has been treated and the mass on his spleen is being monitored. There has been no showing by Murphy of continued deliberate indifference which would necessitate injunctive relief.

Although Murphy testified that the surgeon could not remove the entirety of the mass in his chest and opined that the mass spread from a cancerous tumor in his testicular area that "popped," the medical records do not support this statement. The records from the surgeon who removed the mass state that the mass was removed. Incomplete resection was a possible risk communicated to Murphy, but the records do not indicate that the removal was incomplete (Doc. 57-1, p. 40). Although the records do state that the mass was attached to a nerve as Murphy testified, the records indicate that the surgeon spent 2 ½ hours mobilizing the mass connected to the phrenic nerve and that "careful dissection was used to dissect the mass off of the phrenic nerve." (*Id.* at p. 41). Portions of the mass were sent to the pathologist who determined that the mass was not cancerous. Nothing in the report suggests that the mass was cancerous or had spread from his testicles (*Id.* at pp. 40-41). There is also nothing in the records to suggest that Murphy will need to have yearly CT scans or an MRI as he requests. Dr. Siddiqui testified that yearly scans would expose him to high risks of radiation and are unnecessary. Instead, his condition is being monitored, and Dr. Siddiqui testified that he would order another CT scan if Murphy's symptoms changed.

Murphy's motion for injunctive relief also sought physical therapy after the surgery to remove the mass in his chest. Murphy testified at the evidentiary hearing that he has now received physical therapy and completed the therapy the week prior to the

hearing. He is also scheduled for an evaluation to determine if further physical therapy is needed. Because he has now received the relief he requested, his motion on this point is moot.

### B. Dr. Wobasi and Warden of Menard

Murphy's Complaint alleged claims of deliberate indifference against Dr. Wobasi. In the Court's threshold Order (Doc. 7, pp. 5-6), the Court noted that Dr. Wobasi was deceased. Murphy was given until October 24, 2019, to identify a proper party to substitute in place of Dr. Wobasi. Murphy was unable to find a proper party (*see* Doc. 30) and counsel was appointed, in part, to identify the proper party (Doc. 34). Counsel entered his appearance on November 21, 2019, but no motion for substitution has ever been filed. Under Federal Rule of Civil Procedure 25(a)(1), a party has "90 days after service of a statement noting the death" to move for substitution or the action may be dismissed. That deadline has long since passed. Thus, dismissal of Dr. Wobasi is appropriate at this time. Dr. Wobasi is **DISMISSED without prejudice**.

Finally, the Court notes that Frank Lawrence is no longer the warden of Menard. Alex Jones is the current warden and is **ADDED** to the case, in his official capacity only, for purposes of implementing any future injunctive relief, should Murphy succeed in his claims. Frank Lawrence will remain in the case on the claims against him in his individual capacity.

### CONCLUSION

For the reasons stated above, the Court **DENIES** Murphy's motions for preliminary injunction (Docs. 2 and 27). The Court also **DISMISSES without prejudice** Dr. Wobasi because Murphy has not identified a proper party to substitute in place of the

deceased defendant. The Court also **ADDS** Alex Jones (official capacity only) to the docket for purposes of implementing any future injunctive relief that Murphy may be awarded.

        **IT IS SO ORDERED.**

        **DATED:   March 5, 2020**

                                                                        **NANCY J. ROSENSTENGEL**
                                                                        **Chief U.S. District Judge**